IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:21-CV-2-FL

| | | |
|---|---|---|
| OMAR B. SANDLIN II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| READING TRUCK BODY, INC. and any successors and assigns; THE READING TRUCK GROUP, LLC, and any successors and assigns; THE READING GROUP, LLC, and any successors and assigns; J.B. POINDEXTER D/B/A POINDEXTER & CO, INC., and any successors and assigns, | ) ) ) ) ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' partial motion to dismiss plaintiff's complaint, (DE 10), and plaintiff's motion to dismiss defendants' counterclaim, (DE 17), both brought pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendants' motion is granted in part and denied in part, and plaintiff's motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced this action on December 30, 2020, alleging unlawful age discrimination and retaliation in violation of the Age Discrimination in Employment Act (the "ADEA"), as well as supplemental law claims for violation of the North Carolina Wage and Hour Act (the "NCWHA"), breach of contract, and defamation. Plaintiff included as exhibits to his complaint a signed severance agreement with defendants; a letter to plaintiff from defendants

purporting to terminate payments pursuant to that agreement; a social media post by plaintiff; and a letter from defendants to the Equal Employment Opportunity Commission (the "EEOC") in response to plaintiff's charge of discrimination.

On March 8, 2021, defendants filed the instant motion to dismiss plaintiff's claims for discrimination and retaliation in violation of the ADEA as well as for violation of the NCWHA, corresponding with counts one, two, and four of plaintiff's complaint. Plaintiff subsequently responded, and defendants replied. At the same time defendants filed an answer and counterclaimed against plaintiff for breach of contract. Thereafter, plaintiff filed the instant motion to dismiss defendants' counterclaim. Defendants responded and plaintiff replied. Scheduling activities in the case have been stayed pending decision on the motions to dismiss.

### STATEMENT OF FACTS

The facts alleged in plaintiff's complaint relevant to the instant motions may be summarized as follows. Defendants, joint and/or integrated employers in the truck equipment industry with principal places of business in Pennsylvania and Texas, hired plaintiff on August 20, 2018, as a director of consumer engagement. (Compl. ¶¶ 4-8, 22). Plaintiff, a resident of Wilmington, North Carolina, was around 55 years of age at the time. (See id. ¶ 3).

Plaintiff was promoted to senior director of distribution sales and customer engagement just four months later, on December 24, 2018. (Id. ¶ 23). At the time of his promotion, plaintiff's manager, Greg Freeman ("Freeman"), allegedly advised plaintiff that if he accepted, Freeman would promote him to vice president of sales May 2019. (Id. ¶ 24). On that condition, plaintiff accepted. (Id. ¶ 25). After his promotion, plaintiff alleges that he discovered issues with defendants' customer service, manufacturing, and delivery, which he diligently worked to rectify. (Id. ¶¶ 25-34). In apparent appreciation for his efforts, and in recognition of his 20 years in the

2

truck equipment industry, defendants' customers allegedly expressed in at least one meeting that plaintiff should oversee the remediation of their issues. (Id. ¶ 34).

On August 17, 2019, following plaintiff's attempt to remedy a shipping error quickly handled as he boarded a plane, vice president of manufacturing, Jim Brodie ("Brodie"), called and cursed at plaintiff, accusing him of speaking disrespectfully to another employee. (Id. ¶¶ 36-39). At his manager Freeman's advice, plaintiff reported Brodie's conduct to human resources. (Id. ¶ 40). Also in mid-August, defendants hired Andrew Roberts ("Roberts"), aged 39, as vice president of sales and marketing, the position plaintiff allegedly was promised. (Id. ¶¶ 24, 42). Plaintiff alleges defendants hired Roberts at a higher rate of pay with the intention of replacing plaintiff. (Id. ¶ 42). On August 27, 2019, defendants terminated Freeman. (Id. ¶ 43). Then, on September 29, 2019, just over one year after he was hired, defendants terminated plaintiff, allegedly without explanation. (Id. ¶ 44). Plaintiff reports that he later learned he was terminated because his relationships with the customers stood in Robert's way. (Id. ¶ 51). Plaintiff was approximately 56 years old at the time. (See id. ¶ 3).

The next day, plaintiff was offered and signed a severance agreement, pursuant to which he agreed not to disparage defendants or disclose confidential information, among other things. (Id. ¶¶ 45, 48; see generally DE 1-1). Also pursuant to that agreement, defendants agreed to pay plaintiff $30,000 total in regular installments. (See Compl. ¶ 48; DE 1-1 ¶ 3). On October 17, 2019, however, plaintiff received a letter from defendants' counsel asserting plaintiff had disclosed confidential information and had disparaged defendants in a social media post, thereby contravening the severance agreement. (Compl. ¶ 48). The letter informed plaintiff that all payments pursuant to that agreement would thus immediately cease. (Id.).

3

On December 3, 2019, plaintiff learned that defendants terminated Roberts and allegedly offered him a severance package that was four months longer than plaintiff's, though he had worked for defendants for less time. (Id. ¶ 55). Two days later, plaintiff learned from a former customer that Roberts falsely informed distributers plaintiff was terminated for lying to Brodie. (Id. ¶¶ 47, 56).

On December 12, 2019, plaintiff filed a charge of discrimination with the EEOC against defendants. (Id. ¶ 57). During the subsequent investigation, defendants allegedly communicated to its business community that plaintiff had initiated legal action against defendants, and consequently "the word on the street" was plaintiff is litigious and not suitable for hire. (Id. ¶¶ 69-70). They further communicated that plaintiff was terminated due to "bad conduct." (Id. ¶ 69). On October 2, 2020, plaintiff was issued a right to sue letter. (Id. ¶ 10).

## COURT'S DISCUSSION

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

---

[1] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

B. Analysis

1. Defendants' Partial Motion to Dismiss Plaintiff's Complaint

Defendants move to dismiss plaintiff's claims for discrimination and retaliation in violation of the ADEA (counts one and two, respectively) as well as for violations of the NCWHA (count four).[2] The court addresses each claim in turn below.

a. Unlawful Age Discrimination in Violation of the ADEA

Plaintiff alleges defendants terminated him for the purpose of facilitating his replacement by Roberts, in violation of the ADEA. (Compl. ¶¶ 59-67). In their motion to dismiss, defendants argue plaintiff's claim for discrimination under the ADEA is barred by the separation agreement he signed following his termination. (DE 10 at 2).[3] The court agrees.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996); see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448-49 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."). Here, plaintiff includes as an exhibit to his complaint his separation agreement with defendants, which includes the following provision, in pertinent part:

---

[2] Defendants do not move to dismiss plaintiff's claims for breach of contract (count three) or defamation (count five).

[3] The court addresses separately herein defendants' argument that plaintiff's claim for retaliation under the ADEA is also barred by the separation agreement.

5

> 5. In return for the Consideration in Paragraph 3, you fully and forever discharge and release the Company, its parent, subsidiaries, and affiliates, and each of their respective officers, directors, managers, employees, agents, attorneys and successors and assigns from any and all claims or causes of action, known or unknown, for relief of any nature, arising on or before the date you sign this Agreement, which you now have or claim to have or which you at any time prior to signing this Agreement had, against the Company, including, but in no way limited to: any claim arising from or related to your employment by the Company or the termination of your employment with the Company, including but not limited to any claim under the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Employee Retirement Income Security Act ("ERISA"), the Equal Pay Act ("EPA"), the Occupational Safety and Health Act ("OSHA"), the Pennsylvania Human Relations Act and any and all other local, state, and federal law claims arising under statute or common law, including claims for attorneys' fees and costs. You also agree not to file a lawsuit against the Company in connection with such released claims. You agree that if anyone makes a claim or undertakes an investigation involving you in any way,

(DE 1-1 ¶ 5).

Plaintiff's ADEA discrimination claim plainly falls within that release, and plaintiff does not assert otherwise. Plaintiff additionally does not challenge the adequacy of his release, and review of the agreement confirms for the court that it satisfies the enumerated requirements for a "knowing and voluntary" release pursuant to the ADEA, as amended. See 29 U.S.C. § 626(f). Plaintiff instead alleges that the agreement, apparently valid on formation, was subsequently voided by defendants' alleged failure to provide consideration. (DE 19 at 3).

In the absence of statutorily mandated requirements, separation agreements are analyzed "under ordinary contract principles," based upon "the appropriate state's law for guidance." O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir. 1991). Under North Carolina law,[4] "[f]ailure of consideration is a defense to an action brought upon a contract against the party who has not received the performance for which he bargained." C. O. Gore v. George J. Ball, Inc., 279 N.C. 192, 199 (1971). "It also entitles such party to sue to recover that which he has paid for the performance for which he bargained." Id. "That is, . . . failure of consideration gives the

---

[4] The court discusses further herein plaintiff's citation to certain Pennsylvania case law.

6

disappointed party a right to rescind the contract and recover what he has paid or to defend a suit brought against him thereon, for the reason that the contract is a nullity." Id.

Applied here, in exchange for plaintiff's releases, defendants agreed to pay a total of $30,000 less customary and payroll deductions, over the course of eight weeks, in addition to paying the monthly premium for plaintiff's continued health coverage through December 2019. (DE 1-1 ¶ 3). Plaintiff asserts defendants' termination of severance payments prior to paying the full $30,000 amounted to a failure of consideration thus entitling him to rescind the agreement. (DE 19 at 5).

First, the prevention of litigation itself is "a valid and adequate consideration, for the law favors the settlement of disputes." York v. Westall, 143 N.C. 276, 55 S.E. 724, 725 (1906); see Bohannon v. Trotman, 214 N.C. 706, 200 S.E. 852, 860 (1939) ("Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights of parties."). Thus, plaintiff cannot claim failure of consideration because paragraph five of the agreement, excerpted above, settled doubtful rights of the parties, and that settlement in and of itself is sufficient consideration to support the agreement. (See DE 1-1 ¶ 5).

In the alternative, even assuming the severance payments were plaintiff's sole consideration, to "defeat a sale or contract," failure of consideration must be complete and total. Fair v. Shelton, 128 N.C. 105, 105 (1901); see Mills v. Bonin, 239 N.C. 498, 502 (1954) ("To render a promise void upon an entire failure of consideration, it must appear that the consideration upon which it was supposed to be based did not in fact exist, and its nonexistence was unknown to the parties."). For instance, courts have found failure of consideration where a grantor sells land to which he has no title or a business in which he has no net worth and thus nothing to convey. Mills 239 N.C. 498, 502-03 (1954) (citing Fair, 128 N.C. at 105); see also Hinson v. Jefferson, 24

7

N.C. App. 231, 239 (1974) (allowing rescission of a contract for real property where both parties contemplated that it would be used solely for residential purposes, and it was later found to be incapable of supporting a sewage disposal system). By comparison, courts have found the defense inapplicable where a party who previously made payments to another pursuant to an agreement subsequently declined to continue doing so. See, e.g., Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC, 215 N.C. App. 66, 76 (2011).

Applied here, plaintiff does not allege a complete and total failure of consideration. Indeed, the letter from defendants to the EEOC, which plaintiff attaches to his complaint, provides that that defendants had already paid at least one installment of severance payments, in addition to paying plaintiff's health insurance premiums for October and November, prior to terminating payments. (DE 1-4 at 3). Consequently, plaintiff cannot rely on the defense of failure of consideration to void the agreement.

Plaintiff's arguments to the contrary are unavailing. Plaintiff relies in its response on both Pennsylvania and North Carolina law, declining to address whether to apply the substantive law of North Carolina, where plaintiff resided during his employment with defendants, or of Pennsylvania, pursuant to the severance agreement's choice of law provision, (See DE 19 at 4; DE 1-1 ¶ 12). Plaintiff instead asserts that under either state's law defendants' failure to provide consideration voided the severance agreement. (DE 19 at 4).

Where plaintiff is pursuing this ADEA action in North Carolina, and where plaintiff has disavowed the validity of the severance agreement by raising the defense of a failure of consideration, it would be incongruous for plaintiff now to claim continued validity of a limited portion of the agreement in the form of the governing law and jurisdiction clause. Regardless,

8

plaintiff has not demonstrated that Pennsylvania law is materially different from North Carolina law with respect to the defense of failure of consideration.

In his response, plaintiff relies on McGuire v. Schneider, Inc., 534 A.2d 115 (Pa. 1987) and Metalico Pittsburgh Inc. v. Newman, 160 A.3d 205 (Pa. 2017), both of which are readily distinguishable from this case. In McGuire, appellee attempted to justify the introduction of parol evidence of an earlier contract, arguing that a failure of consideration voided the later contract. 534 A.2d at 118. In Metalico, employees raised the defense in an attempt to void restrictive covenants. 534 A.2d at 118. In both cases, the court found the defense inapplicable.

Neither case concerned the release of a right to sue, pursuant to the ADEA or otherwise. Nor did parties in either case assert partial as opposed to complete failure of consideration. Cf. Maguire v. Wheeler, 300 Pa. 513, 519 (1930) ("It is true that a conveyance will not generally be invalidated by reason of a total or partial failure to comply with his agreement, as by neglect or refusal to pay the sum agreed upon, for in such case the plaintiff has a remedy based on his contract to recover."). Additionally, neither contract in issue purported to allow one party to terminate their provision of consideration upon the other party's breach, as here. (See DE 1-1 ¶ 15 ("[I]f after signing this Agreement you fail to abide, or threaten to not abide, by any of the terms described in Paragraphs 6 through 8 above, the Company has the right to suspend all Consideration payments described in Paragraph 5[.]"); see, e.g., DE 1-1 ¶ 6 ("You represent and warrant that you have returned to the Company all of their property[.]"); DE 1-1 ¶ 7 ("You agree not to disparage the company."); DE 1-1 ¶ 8(a) ("You agree that you will not, for a period of three (3) years from the date you sign this Agreement . . . disclose or otherwise communicate to any person any confidential or proprietary information regarding the Company[.]")). Thus, McGuire and Metalico are inapposite.

Consequently, having found his release of claims under the ADEA to have been knowingly and voluntarily made, and where plaintiff has raised no other defense against enforcement of that release, plaintiff's claims for discrimination in violation of the ADEA are dismissed.[5]

      b.  Retaliation in Violation of the ADEA

Defendants asserts that plaintiff's retaliation claim also is barred pursuant to his severance agreement, was not administratively exhausted, and otherwise is supported by bare assertions without factual support. The court agrees, in part, with defendants.

Turning to defendants' first assertion, as the court has already found plaintiff validly released claims under the ADEA pursuant to paragraph five of his severance agreement, excerpted above, the question becomes whether plaintiff's claim falls within that release. (DE 1-1 ¶ 5). In answering that question, the court looks to the terms of the agreement. See Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949) ("It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument."); Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976) ("Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be.").

Here, the contract only purports to release claims under the ADEA "arising on or before the date [of signing,]" namely September 30, 2019, the day after plaintiff was terminated. (DE 1-1 ¶ 5; Compl. ¶ 44-45). Indeed, to interpret the contract otherwise would be to find it in

---

[5] Defendants additionally assert that plaintiff's claims of discrimination are barred by the doctrines of ratification and estoppel. (See DE 10 at 2). As defendants' motion with regard to count one is resolved on their assertion that plaintiff released such claims in his severance agreement, the court does not consider these alternative arguments.

10

contravention of a statutorily enumerated requirement. See 29 U.S.C. § 626(f)(1)(C). Looking then to plaintiff's retaliation claim, plaintiff asserts conduct occurring during the EEOC's investigation, which in turn began no earlier than December 12, 2019, following plaintiff's filing of a charge of discrimination. (See Compl. ¶ 57; id. ¶ 69 (providing that defendants' alleged retaliatory conduct occurred "[d]uring the EEOC's investigation")). Such claims arising after plaintiff's signing of his severance agreement are not dismissed. However, to the extent plaintiff asserts retaliation claims arising before he signed the severance agreement on September 30, 2019, they are DISMISSED as barred.

Next, defendants assert that, even if plaintiff had not released his claim, he failed to administratively exhaust the alleged retaliatory acts. See 29 U.S.C. § 626(d). However, defendants concede in their reply that ADEA exhaustion requirements do not bar plaintiff's assertion that defendants retaliated against him after he filed his EEOC charge. (See DE 20 at 6); see also Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). As already noted, plaintiff's retaliation claims appear to be so limited. (See Compl. ¶ 69). To the extent plaintiff asserts retaliation claims arising before the filing of his EEOC charge, however, where plaintiff's charge is devoid of any mention of retaliation, (see DE 11-1), such claims are DISMISSED for failure to exhaust. Cf. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("[A] plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex.").

Finally, defendants assert generally that plaintiff fails to state a claim for retaliation under the ADEA as the complaint contains "vague, generalized allegations." (DE 11 at 9 n.5). To state a claim for retaliation, a plaintiff must allege that he "[1] engaged in protected activity, [2] that his employer took an adverse employment action against him, and that [3] there was a causal link

11

between those events." Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018). Here, plaintiff asserts that he filed a charge of discrimination with the EEOC. (Compl. ¶ 57). Filing a charge is a protected activity, which defendant does not dispute. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003). Plaintiff asserts that defendants retaliated against him for filing such charge by falsely telling others that he was terminated because he lied, claiming plaintiff was terminated due to "bad conduct," and communicating to its business community that plaintiff initiated legal action against them and is litigious. (Compl. ¶ 69). Where defendants do not contest that such conduct, if true, amounts to adverse employment action, nor do they challenge the causal connection, the court DENIES their motion to dismiss in this part.[6]

Thus, defendants' motion to dismiss plaintiff's claims of retaliation under the ADEA is granted in part and denied in part as set forth herein.

      c. Violation of the NCWHA

Plaintiff additionally asserts defendants' failure to pay the severance payments violated the NCWHA. (Compl. ¶¶ 80-85). Defendants move to dismiss this claim on the grounds that the severance payments at issue do not constitute "wages" under the NCWHA. (DE 11 at 10). The court agrees.

"The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." State v. Rankin, 371 N.C. 885, 889 (2018). When the meaning is clear from the statute's plain language, however, courts "give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." Winkler v. N.C. State Bd. of Plumbing, 374 N.C. 726, 730 (2020); see Fidelity Bank v. N.C. Dep't of Revenue, 370 N.C. 10, 19 (2017) (providing that when the General Assembly uses an

---

[6] However, to the extent plaintiff intends to incorporate within his claim conduct predating the filing of his charge, per this court's earlier analysis, it is dismissed for failure to exhaust.

"unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning"). In interpreting the meaning of a word or phrase, courts look to the context in which it is used. Lafayette Transp. Serv., Inc. v. Robeson Cty., 283 N.C. 494, 500 (1973). Relatedly, "[p]arts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office, 294 N.C. 60, 66 (1978).

Plaintiff makes his claim pursuant to the wage payment provision of the NCWHA, which provides:

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance.

N.C. Gen Stat. § 95-25.6. Looking first to the context in which "wage" is used, it is paid by an "employer" to an "employee," thus indicating that it is made pursuant to an employer/ employee relationship. That supposition is supported by the statutory definition of "wage," which provides "'[w]age' paid to an employee means compensation for labor or services rendered by an employee." N.C. Gen. Stat. § 95-25.2(16) (emphasis added); see also N.C. Gen. Stat. § 95-25.2(9) ("'Payday' means that day designated for payment of wages due by virtue of the employment relationship." (emphasis added)).

Applied here, the severance payments were not promised to plaintiff in his capacity as an employee. Quite the contrary, they were promised to him in his capacity as someone whose employment had been terminated. (See Compl. ¶ 18 ("After he was terminated, [d]efendants offered [p]laintiff a severance agreement[.]" (emphasis added)). Thus, they do not constitute "wages" under the NCWHA.

Plaintiff's arguments to the contrary are unavailing.  First, plaintiff notes that the payment amount was calculated based on plaintiff's base salary as an employee and were additionally subject to "customary and applicable payroll deductions."  (DE 19 at 13).  Further, his health coverage equaled his "monthly premium" for his continued participation in the company's group health coverage.  (Id.).  Those facts alone, however, do not transform the payments into a "wage" compensable by the NCWHA.  Particularly here where the severance agreement distinguished between the severance payments and outstanding wages owed.  (Compare DE 1-1 ¶ 2 ("You will be paid for all outstanding wages earned since your last paycheck through and including the effective date of your separation from employment . . . . You confirm and agree that, other than the payments set forth in this paragraph, you received all wages . . . to which you are entitled as a result of your employment with the Company.")), with (DE 1-1 ¶ 3 ("As consideration for this Agreement, the Company agrees to pay you a gross total amount of Thirty Thousand dollars ($30,000) . . . . You acknowledge and agree that the Consideration is in addition to, and in excess of, all amounts that you claim you are owed.")).

Plaintiff's reliance on Bigelow v. Sassafras Grove Baptist Church, 247 N.C. App. 401 (2016) is similarly misplaced.  There, as part of the plaintiff's negotiation in becoming a full-time pastor with the defendant church, the parties entered a contract requiring the defendant church to pay plaintiff his full salary in the event he became disabled.  Id. at 402-403.  That agreement was in part in recognition of the benefits the plaintiff forewent with his former employer in taking a full-time position with the defendant church.  Id. at 402.  The agreement to make such payments thus was made as part of the plaintiff's employment agreement, and pursuant to an employer/employee relationship.  Here, by comparison, it was made by virtue of the dissolution of that relationship.  Bigelow is thus inapposite.

14

Thus, where the severance payments are not wages covered by the NCWHA, plaintiff's claim pursuant to the NCWHA is dismissed.

2. Plaintiff's Motion to Dismiss Defendants' Counterclaim

In their answer, defendants Reading Truck Group, LLC; Reading Truck Body, LLC; and J.B. Poindexter & Co., Inc. counterclaim against plaintiff for breach contract.[7] Defendants assert plaintiff breached the separation agreement by allegedly failing to return computer computers, disparaging the company in a social media post, disclosing confidential information about a potential acquisition to a customer, and filing this lawsuit. (Answer ¶¶ 7-15). Plaintiff moves to dismiss defendants' counterclaim on the grounds that defendants' failure to pay the full $30,000 pursuant to that agreement amounted to a failure of consideration rendering the agreement null and void. (DE 18 at 4). The foregoing analysis of the defense of failure of consideration as applied to the separation agreement applies equally here, and pursuant to that analysis plaintiff's motion is denied.

**CONCLUSION**

Based on the foregoing, that part of defendants' motion seeking to dismiss plaintiff's claim for discrimination in violation of the ADEA and for violation of the NCWHA is GRANTED. That part of defendants' motion seeking to dismiss plaintiff's claim for retaliation in violation of the ADEA, however, is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiff's motion to dismiss defendants' counterclaim is DENIED. Thus, remaining are plaintiff's claims for retaliation in violation of the ADEA as limited herein (count two), breach of contract (count three), and defamation (count five), as well as defendants' counterclaim for breach of contract.

---

[7] Defendants assert in their answer that defendant Reading Truck Body, Inc. was an entity related to defendant Reading Truck Body, LLC that no longer exists as a corporate entity. (Answer ¶ 5).

15

Where the parties' scheduling activities were previously stayed pursuant to this court's order entered April 26, 2021, the court now LIFTS that stay. The parties are DIRECTED to file a revised discovery plan on or before April 19, 2022, pursuant to the court's initial scheduling order entered March 9, 2021.

SO ORDERED, this the 25th day of March, 2022.

                                                          LOUISE W. FLANAGAN
                                                          United States District Judge